## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

EDWARD T. GAVIN, TRUSTEE OF THE UE
LIQUIDATING TRUST, ON BEHALF OF
THE ESTATES OF ULTIMATE ESCAPES
HOLDINGS, LLC,

                Plaintiff;

     v.

CLUB HOLDINGS, LLC,

                Defendant.

Civil Action No. 15-175-RGA

## MEMORANDUM OPINION

Christopher A. Ward, Esq., Shanti M. Katona, Esq., POLSINELLI PC, Wilmington, DE; Todd
H. Bartels, Esq., Robert V. Spake, Jr., Esq., POLSINELLI PC, Kansas City, MO, attorneys for
Plaintiff.

Mark I. Duedall, Esq., BRYAN CAVE LLP, Atlanta, GA, attorney for Defendant.

March 31 , 2016

ANDREWS, U.S. DISTRICT JUDGE:

Presently before the Court is Defendant's Motion to Dismiss for Failure to State a Claim Under Fed. R. 12(b)(6). (D.I. 10). The motion is premised on the statute of limitations, and has been fully briefed. (D.I. 11, 14, 20). For the reasons set forth herein, Defendant's motion to dismiss is **GRANTED**. Plaintiff is granted leave to amend the Complaint as to Counts I, II, and VI.

## I.   BACKGROUND

This dispute arises out of a potential, ultimately unconsummated, merger between Ultimate Escapes Holdings, LLC and its affiliates (collectively, "Ultimate Escapes") and Defendant Club Holdings, LLC. Ultimate Escapes was a luxury destination club, offering its customers paid memberships that provided access to vacation residences, hotel and resort properties, pre-trip planning advice, and on-site concierge services in various locations around the world. (D.I. 1 at 6). In 2010, Ultimate Escapes experienced financial challenges and began to explore a potential merger with a competitor, Club Holdings. (*Id.* at 6–7).

In anticipation of exploring the possibility of a merger, Ultimate Escapes and Club Holdings entered a Mutual Confidentiality Agreement on March 1, 2010. (*Id.* at 8). In April 2010, Ultimate Escapes and Club Holdings executed a Confidential Letter of Intent ("LOI") and continued to negotiate the terms of a potential merger. (*Id.* at 9–10). Pursuant to the LOI, Club Holdings proposed to transfer certain assets and liabilities to Ultimate Escapes in exchange for an equity interest in Ultimate Escapes. (D.I. 1-2 at 2). The Mutual Confidentiality Agreement and LOI contemplated that Club Holdings would undertake due diligence, pursuant to which Club Holdings obtained membership information from Ultimate Escapes. (D.I. 1 at 10). The

1

Mutual Confidentiality Agreement and LOI contain choice of law clauses that state that Delaware law governs the agreements. (D.I. 1-1 at 6; D.I. 1-2 at 7).

Beginning in July 2010, Ultimate Escapes' financial difficulties escalated such that it might have been unable to meet critical financial obligations in August. (D.I. 1 at 10). Club Holdings offered to infuse Ultimate Escapes with some cash to meet its short term obligations by buying certain of Ultimate Escapes' assets on an expedited basis. (*Id.* at 11). To that end, on August 9, 2010, Club Holdings and Ultimate Escapes executed an agreement dated August 6, 2010 (the "August 6 Agreement"). (*Id.* at 13; D.I. 1-6). The August 6 Agreement provided that, in exchange for $115,000, Ultimate Escapes would, among other things, negotiate with its secured lender to arrange for the sale of certain property located in Hawaii, secure an assignment and extension of certain real property leases located in Hawaii, and take certain steps to arrange membership transfers to Club Holdings. (D.I. 1 at 13; D.I. 1-6). To arrange membership transfers, Ultimate Escapes agreed to encourage its members to transfer their memberships to Club Holdings and to allow Club Holdings' employees and representatives to solicit members of Ultimate Escapes until a certain number of "membership nights" had been transferred in aggregate. (D.I. 1 at 13–14; D.I. 1-6). The August 6 Agreement contained a choice of law clause pursuant to which the parties agreed that Colorado law would govern the agreement. (D.I. 1-6 at 4).

Ultimate Escapes and Club Holdings subsequently grew further apart in their merger negotiations. (*See* D.I. 1 at 14). Ultimate Escapes terminated the LOI on August 17, 2010 and requested that Club Holdings destroy all of Ultimate Escapes' confidential information in its possession. (*Id.* at 14, 15; D.I. 1-7). On September 16, 2010, Ultimate Escapes came to believe that Club Holdings had solicited approximately 200 of its members. (D.I. 1 at 16). As a result,

2

Ultimate Escapes sent a letter to the president and general counsel of Club Holdings requesting

that it cease and desist from using Ultimate Escapes' membership information. (*Id.* at 16–17).

On September 17, 2010, Club Holdings' general counsel responded that it was permitted to

solicit Ultimate Escapes' members under the August 6 Agreement and would therefore continue

to do so. (D.I. 1 at 17; D.I. 1-12 at 2).

On September 20, 2010, Ultimate Escapes filed for chapter 11 bankruptcy. (D.I. 1 at 17).

It also filed an adversary complaint against Club Holdings in the U.S. Bankruptcy Court for the

District of Delaware. (D.I. 1 at 17; D.I. 1-13). In the adversary proceeding, Ultimate Escapes

sought to enjoin Club Holdings from using the membership information to solicit Ultimate

Escapes' members. (D.I. 1 at 17; D.I. 1-13). The Bankruptcy Court heard argument on Ultimate

Escapes' motion for a temporary restraining order on September 22, 2010. (D.I. 1 at 18; D.I. 1-

15). At the September 22nd hearing, the Bankruptcy Court concluded that Club Holdings was

permitted to solicit Ultimate Escapes' members pursuant to the August 6 Agreement. (D.I. 1-15

at 66–67). The Bankruptcy Court then continued the hearing to September 29, 2010. (D.I. 1 at

18–19; D.I. 1-15 at 104). Ultimate Escapes contends that, hours after the Bankruptcy Court's

September 22, 2010 decision, Club Holdings solicited all of Ultimate Escapes' approximately

1,200 members. (D.I. 1 at 19). At the September 29th hearing, the Bankruptcy Court again

denied Ultimate Escapes' request for preliminary injunctive relief on the ground that Club

Holdings' solicitation of all of Ultimate Escapes' members was consistent with the August 6

Agreement. (D.I. 1 at 23–24; D.I. 1-21 at 3).

After the Bankruptcy Court denied Ultimate Escapes' request for preliminary injunctive

relief on the ground that the August 6 Agreement had given Club Holdings the right to solicit all

of Ultimate Escapes' members, the adversary proceeding against Club Holdings was voluntarily

3

dismissed. (D.I. 1 at 24). Plaintiff Edward T. Gavin, Trustee of the UE Liquidating Trust (the "Trustee"), thereafter filed an action against Ultimate Escapes' former director and Chief Executive Officer, James Tousignant, and the former Chairman of its Board, Richard Keith, alleging breach of fiduciary duty. (*Id.* at 25; D.I. 1-22). In the case against Tousignant and Keith, the Bankruptcy Court offered a different interpretation of the August 6 Agreement than it had in Ultimate Escapes' suit against Club Holdings. (D.I. 1 at 27). In its findings of fact and conclusions of law, the Bankruptcy Court concluded that it was "consistent with the evidentiary record to interpret the August 6th Agreement as providing only for a limited solicitation" of thirty of Ultimate Escapes' members. (D.I. 1 at 27; D.I. 1-23 at 26, 30). The Bankruptcy Court's interpretation of the August 6 Agreement in the case against Tousignant and Keith spurred the Trustee to re-assert the claims against Club Holdings that it had voluntarily dismissed in the first action. (*See* D.I. 1 at 2–3, 27). The Trustee now asserts nine counts against Club Holdings arising from the circumstances briefly summarized above, including breach of contract, unjust enrichment, misappropriation of trade secrets, fraudulent and negligent misrepresentation, and avoidance and recovery of fraudulent and preferential transfers. (*Id.* at 28–34).

## II.    LEGAL STANDARD

In reviewing a motion to dismiss pursuant to Rule 12(b)(6), the Court must accept the complaint's factual allegations as true. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007). Rule 8(a) requires "a short and plain statement of the claim showing that the pleader is entitled to relief." *Id.* at 555. The factual allegations do not have to be detailed, but they must provide more than labels, conclusions, or a "formulaic recitation" of the claim elements. *Id.* ("Factual allegations must be enough to raise a right to relief above the speculative level . . . on the assumption that all the allegations in the complaint are true (even if doubtful in fact).").

4

Moreover, there must be sufficient factual matter to state a facially plausible claim to relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The facial plausibility standard is satisfied when the complaint's factual content "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* ("Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." (internal quotation marks omitted)). Affirmative defenses, such as a statute of limitations, may be raised in a Rule 12(b)(6) motion as long as "the predicate establishing the defense is apparent from the face of the complaint." *Bethel v. Jendoco Constr. Corp.*, 570 F.2d 1168, 1174 n.10 (3d Cir. 1978). A "court ruling on a motion to dismiss may not consider matters extraneous to the pleadings," except a court may consider documents "integral to or explicitly relied upon in the complaint." *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1426 (3d Cir. 1997) (emphasis and internal quotation marks omitted).

## III.   ANALYSIS

### A.  Applicable Statutes of Limitations

The Complaint was filed on February 20, 2015. (D.I. 1). The Trustee knew the factual bases underlying the Complaint no later than September 20, 2010, when the Trustee filed the adversary complaint in the Bankruptcy Court based on the same facts. (D.I. 1 at 17; D.I. 1-13). Thus, more than four years elapsed between when the Trustee learned of the factual bases underlying these claims and the date he filed the Complaint.

### 1.  State Law Claims (Counts I–III, VI, VIII, IX)

Counts I, II, III, VI, VIII, and IX are state law claims. In diversity actions, a federal court must apply the substantive law of the state in which it sits. *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938). State statutes of limitations are considered substantive law for purposes of the *Erie*

5

doctrine. *Guar. Trust Co. of N.Y. v. York*, 326 U.S. 99, 110 (1945). State laws that affect the

tolling of a statute of limitations are also generally regarded as substantive for purposes of the

*Erie* doctrine. *See, e.g., Walker*, 446 U.S. at 744; *Guar. Trust Co. of N.Y.*, 326 U.S. at 110.

Thus, as between federal and state law, this Court must apply state law statutes of limitations to

the Trustee's state law claims.

To make a choice among competing state laws, this Court must apply Delaware's conflict

of laws rules. *See In re PHP Healthcare Corp.*, 128 F. App'x 839, 843 (3d Cir. 2005); *In re*

*Winstar Commc'ns, Inc.*, 435 B.R. 33, 44 (Bankr. D. Del. 2010), *aff'd*, 2013 WL 6053838 (D.

Del. Nov. 15, 2013), *aff'd*, 591 F. App'x 58 (3d Cir.), *cert. denied*, 136 S. Ct. 402 (2015). Under

Delaware's conflict of laws rules, the Restatement (Second) of Conflict of Laws analysis

determines which jurisdiction's substantive laws apply. *See Tumlinson v. Advanced Micro*

*Devices, Inc.*, 106 A.3d 983, 987 (Del. 2013). The law of the forum governs procedural matters.[1]

*Id.* Under Delaware's conflict of laws rules, a statute of limitations is procedural, not

substantive. *Norman v. Elkin*, 2007 WL 2822798, *3 (D. Del. Sept. 26, 2007). Thus, Delaware

law generally determines whether an action is barred by the statute of limitations. *Juran v. Bron*,

2000 WL 1521478, *10 (Del. Ch. Oct. 6, 2000); *In re Winstar Commc'ns, Inc.*, 435 B.R. at 44.

Because Delaware is the forum state, Delaware statutes of limitations apply to the Trustee's state

law claims (Counts I–III, VI, VIII and IX).[2]

---

[1] An exception to this rule, not applicable to the present case, "arises when the procedural law of the foreign state is so inseparably interwoven with substantive rights as to render a modification of the foregoing rule necessary, lest a party be thereby deprived of his legal rights." *Pivotal Payments Direct Corp. v. Planet Payment, Inc.*, 2015 WL 9595285, at *3 (Del. Super. Dec. 29, 2015) (internal quotation marks omitted).

[2] Count VI alleges fraudulent transfers recoverable under the Uniform Fraudulent Transfer Act. (D.I. 1 at 32). The Trustee does not specify which state's fraudulent transfer law he asserts. (*See id.*). Because Delaware is the forum state, Delaware's statute of limitations for fraudulent transfers applies, regardless of whether Florida's, Colorado's, or Delaware's substantive fraudulent transfer law applies. *See Tumlinson*, 106 A.3d at 987.

The parties dispute whether Delaware's Borrowing Statute applies to the Trustee's state law claims. (*See* D.I. 14 at 21–22; D.I. 20 at 12 n.6). Delaware's Borrowing Statute states:

> Where a cause of action arises outside of this State, an action cannot be brought in a court of this State to enforce such cause of action after the expiration of whichever is shorter, the time limited by the law of this State, or the time limited by the law of the state or country where the cause of action arose, for bringing an action upon such cause of action.

Del. Code Ann. tit. 10, § 8121. Delaware statutes of limitations apply to the Trustee's claims regardless of whether Delaware's Borrowing Statute applies. If the Borrowing Statute does not apply to Count I, the applicable statute of limitations is Delaware's. *See Chaplake Holdings, Ltd. v. Chrysler Corp.*, 766 A.2d 1, 5 (Del. 2001). If the Borrowing Statute does apply to Count I, the Court should look to Delaware's three year statute of limitations regardless of whether the breach of contract occurred in Colorado, Delaware, or Florida because Delaware's state of limitations is the shortest. *See* Colo. Rev. Stat. § 13-80-101(1)(a); Del. Code Ann. tit. 10, §8106(a); Fla. Stat. Ann. § 95.11(2)(b). Delaware's statutes of limitations for Counts II, III, VI, VIII, and IX likewise apply regardless of whether the causes of action arose in Delaware, Colorado, or Florida because each Delaware statute of limitations is the same as or shorter than the analogous Colorado or Florida statute of limitations. *See* Del. Code Ann. tit. 6, §§ 1309, 2006, tit. 10, § 8106(a); Colo. Rev. Stat. §§ 7-74-107, 13-80-101(1)(a), (c), 13-80-108(3) & 38-8-110; Fla. Stat. Ann. § 95.11(2)(b), (3)(j), 688.007 & 726.110. Thus, regardless of whether the Borrowing Statute applies to the Trustee's state law claims, Delaware's statutes of limitations apply.

Delaware statutes of limitations apply to the Trustee's state law claims arising out of the contracts between Ultimate Escapes and Club Holdings despite the Colorado choice of law provision in the August 6 Agreement. Ultimate Escapes and Club Holdings entered three

7

agreements relevant here:  the Mutual Confidentiality Agreement and the LOI, which contain

Delaware choice of law provisions, and the August 6 Agreement, which contains a Colorado

choice of law provision.  (D.I. 1-1 at 6; D.I. 1-2 at 7; D.I. 1-6 at 4).  In Delaware, a choice of law

provision requires application of the statutes of limitations of the chosen jurisdiction only if the

provision specifically states that it includes statutes of limitations.  *Juran*, 2000 WL 1521478, at

*11; *Am. Energy Tech., Inc. v.  Colley & McCoy Co.*, 1999 WL 301648, at *2 (D. Del. Apr. 15,

1999).  Because the August 6 Agreement's choice of law provision does not specifically state

that it is intended to include statutes of limitations, the statute of limitations of the forum state

applies.  (D.I. 1-6 at 4); *see Juran*, 2000 WL 1521478, at *11.  Thus, Delaware's statute of

limitations applies to claims arising out of the agreements between Ultimate Escapes and Club

Holdings notwithstanding the choice of law provision in the August 6 Agreement.

 For the reasons stated above, Delaware statutes of limitations apply to Counts I–III, VI,

VIII and IX.

### 2. Federal Claims (Counts IV, V, VII)

 Federal statutes of limitations apply to claims under federal law.  *Chico-Velez v. Roche

Prods., Inc.*, 139 F.3d 56, 58 n.3 (1st Cir. 1998).  Counts IV, V, and VII all relate to and arise

from Ultimate Escapes' bankruptcy.  (D.I. 1 at 30–33).  Bankruptcy Code § 546 provides the

statute of limitations applicable to Counts V and VII.  11 U.S.C. § 546(a).  Claims brought under

§ 546 must be brought within two years after the petition date or within one year after a trustee is

appointed.  § 546(a)(1)(B).  Bankruptcy Code § 549 provides the statute of limitations applicable

to Count IV.  § 549(d).  Claims brought under § 549 must be brought within the earlier of "two

years after the date of the transfer sought to be avoided; or . . . the time the case is closed or

dismissed."  § 549(d)(1), (2).

## B. Equitable Tolling

The Trustee alleges in the Complaint that "[t]o the extent the statute of limitations for any

of the causes of action asserted herein below has run, they are equitably tolled and are otherwise

preserved under other well-established legal and equitable principles." (D.I. 1 at 28).

Federal law governs tolling of the Trustee's federal law claims. *Chico-Velez*, 139 F.3d at

58 n.3 ("Given that the relevant limitations period originates in a federal statute, the issue of

equitable tolling is governed by federal law."). Delaware's equitable tolling principles apply to

the Trustee's state law claims. *See Bohus v. Beloff*, 950 F.2d 919, 924 (3d Cir. 1991) ("[S]tate

tolling principles are generally to be used by a federal court when it is applying a state

limitations period." (internal quotation marks omitted)). Delaware state courts, however, apply

the same equitable tolling principles as the Third Circuit does. *Owens v. Carman Ford, Inc.*,

2013 WL 5496821, at *3 (Del. Super. Sept. 20, 2013).

The Trustee argues that the statutes of limitations in this action were equitably tolled

because he was prevented from asserting his rights in an extraordinary way. (D.I. 14 at 11).

Under that theory, the Trustee must establish two elements: "(1) that he has been pursuing his

rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented

timely filing. . . . [T]he second prong of the equitable tolling test is met only where the

circumstances that caused a litigant's delay are both extraordinary *and* beyond its control."

*Menominee Indian Tribe of Wis. v. United States*, 136 S. Ct. 750, 755–56 (2016) (internal

quotation marks and citations omitted).

The Trustee analogizes the circumstances under consideration here to those at issue in

*Levey v. Brownstone Asset Mgmt., LP*, 76 A.3d 764 (Del. 2013), where the Delaware Supreme

Court concluded that the applicable statute of limitations was equitably tolled because the

diligent plaintiff had been prevented from asserting his claims. (*See* D.I. 14 at 11–19). *Levey* involved a dispute between several investment companies and Levey, who had been a non-managing owner of the companies. 76 A.3d at 766. The companies sued Levey in the U.S. District Court for the Southern District of New York for claims that arose out of Levey's withdrawal from the companies. *Id.* Levey responded with an answer and counterclaim, alleging that he was a one third owner of the companies and was entitled to return of his capital and a cash payment of one-third of the companies' value. *Id.* Levey then filed a motion to stay the action in the Southern District and to compel the companies to submit to arbitration before the National Association of Securities Dealers ("NASD"). *Id.* at 767. The Southern District granted Levey's motion to stay and held that the investment companies were subject to mandatory NASD arbitration. *Id.* The Southern District then ordered the case closed. *Id.* Levey filed a formal demand for arbitration before the FINRA, the successor to the NASD, asserting the same claim he had raised in his counterclaim in the Southern District action. *Id.* FINRA informed the parties that its rules did not compel the parties to arbitrate their disputes in that forum and advised that Levey pursue his claims "'in another forum which does have jurisdiction.'" *Id.* "Rather than acting on this advice promptly, Levey waited more than two years" to bring suit against the companies in the Delaware Court of Chancery. *Id.* In the Court of Chancery, the companies argued that Levey's claim was barred by the doctrine of laches by analogy to the statute of limitations. *Id.* at 768. While the Court of Chancery observed that there were "plenty of indicia" that "Mr. Levey was treated unjustly" and "treated ill," the court nonetheless "regarded itself as obligated to apply laches by analogy to the statute of limitations" and granted summary judgment in favor of the Defendants. *Id.* The Delaware Supreme Court held that the statute of limitations was equitably tolled during the pendency of the federal

10

actions. *Id.* at 772–73. The Supreme Court concluded that the "undisputed facts establish that Levey timely and consistently asserted his claim in two, non-Delaware, fora within the analogous limitations period, and that his delay in filing suit in Delaware was attributable partially—but not entirely—to extraneous factors other than his own inaction." *Id.*

The Trustee argues that, like the plaintiff in *Levey*, he was prevented from bringing this Complaint by "erroneous court rulings and extraneous factors outside of his control." (D.I. 14 at 14). The Trustee contends that the Bankruptcy Court's finding that the August 6 Agreement permitted Club Holdings to solicit all of Ultimate Escapes' customers, together with the Trustee's fiduciary duty to abandon a lawsuit once it becomes reasonably obvious that further litigation would cost more than it would likely bring into the estate, prevented the Trustee from continuing the litigation against Club Holdings. (*Id.* at 16 (citing *In re Taxman Clothing Co.*, 49 F.3d 310, 315 (7th Cir. 1995)). The instant circumstances are distinguishable from those in *Levey*.

Fundamentally, the Trustee has not alleged facts that, if true, would show that: (1) he pursued his rights against Club Holdings diligently; (2) the circumstances that prevented timely filing in this Court were extraordinary; or (3) the circumstances that prevented timely filing were beyond the Trustee's control. The Trustee argues that he diligently pursued the claims despite voluntarily dismissing the adversary proceedings against Club Holdings in the Bankruptcy Court because the dismissal was prudent, reasonable, and mandatory pursuant to his fiduciary obligations. (*Id.* at 16). "If a court equated reasonableness in waiting with diligence in pursuing, a statute of limitations could be tolled indefinitely, even for litigants who reasonably decide to abandon their claims." *Menominee Indian Tribe of Wis. v. United States*, 841 F. Supp. 2d 99, 107 (D.D.C. 2012), *aff'd on other grounds*, 764 F.3d 51 (D.C. Cir. 2014), *aff'd* 136 S. Ct. 750

11

(2016). That the Trustee was legally obligated to dismiss the claims if, in his judgment, he was unlikely to prevail does not distinguish him from other litigants who "routinely abandon claims given the costs of litigation, limited financial resources, and/or the uncertainty of the outcome." *Id.* Unlike in *Levey*, where the statute of limitations was tolled while the plaintiff consistently pursued his rights in one forum after another, 76 A.3d at 773, here the Trustee abandoned his claims against Club Holdings in the face of unfavorable preliminary rulings without seeking further redress from Club Holdings. (D.I. 1 at 24). Regardless of the reasonableness of the Trustee's decision to dismiss the adversary proceedings against Club Holdings, it does not amount to the Trustee's diligent pursuit of his claims.

The Trustee's Complaint also does not allege facts that, if true, would prove that the circumstances that prevented the Trustee from timely filing in this Court were extraordinary. The Trustee argues that the Bankruptcy Court's "unexpected[] revers[al]" with respect to its interpretation of the August 6 Agreement constituted extraordinary circumstances in that "the same court repeatedly told Ultimate Escapes it had no claim against Club Holdings, only later to . . . re-open the door to the Trustee's claims against Club Holdings." (D.I. 14 at 17). Although the Trustee characterizes the Bankruptcy Court's successive interpretations of the August 6 Agreement as a "reversal" (*id.* at 22), the Bankruptcy Court initially interpreted the contract on an expedited basis in the context of a request for preliminary injunctive relief. (D.I. 1 at 18, 22). That the Bankruptcy Court reached a different conclusion after consideration of a full record is not extraordinary. *See Hamilton Watch Co. v. Benrus Watch Co.*, 206 F.2d 738, 742 (2d Cir. 1953) ("[A] judge's legal conclusions, like his fact-findings, are subject to change after a full hearing and the opportunity for more mature deliberation. For a preliminary injunction—as indicated by the numerous more or less synonymous adjectives used to label it—is, by its very

12

nature, interlocutory, tentative, provisional, ad interim, impermanent, mutable, not fixed or final or conclusive, characterized by its for-the-time-beingness."). It is also not an extraordinary circumstance that the Trustee would have faced significant costs, limited resources, and uncertain outcomes had he continued to pursue his claims against Club Holdings. *See Menominee Indian Tribe of Wis.*, 136 S. Ct. at 757 ("[T]he fact that there may have been significant risk and expense associated with presenting and litigating [Plaintiff's] claims is far from extraordinary."). The circumstances that prevented the Trustee from timely filing in this Court were therefore not extraordinary.

Finally, the circumstances that prevented timely filing were not beyond the Trustee's control. Unlike in *Levey*, where the plaintiff's delay in filing suit in Delaware was partially attributable to final decisions rendered by the Southern District of New York and FINRA regarding the scopes of their jurisdiction, 76 A.3d at 773, the Trustee's delay in pursuing his claims in this Court was wholly attributable to his voluntary dismissal of the adversary proceedings against Club Holdings in the face of unfavorable preliminary rulings (D.I. 1 at 24). The Trustee argues that "despite [his] utmost reasonable diligence, he could not have discovered that these causes of action existed because the court repeatedly told him that they explicitly did not exist." (D.I. 14 at 23). The Trustee's mistaken judgment, however reasonable, that voluntary dismissal was warranted on the basis of the Bankruptcy Court's preliminary rulings was "quite different from relying on actually binding precedent that is subsequently reversed." *See Menominee Indian Tribe of Wis.*, 136 S. Ct. at 757 (emphasis omitted). The circumstances resulting in the Trustee's decision to dismiss the prior proceedings against Club Holdings were therefore within his control.

13

For the reasons described above, at no point was the Trustee prevented by extraordinary external obstacles from pursuing its claims against Club Holdings. Thus, the statutes of limitations were not equitably tolled.

## C. Continuing Wrongs

"The continuing wrong doctrine applies to toll the statute of limitations if there is continuing affirmative wrongful conduct." *800 Servs. Inc. v. AT&T Corp.*, 30 F. App'x 21, 23 (3d Cir. 2002). Counts I and II, the breach of contract and unjust enrichment claims, do not allege continuing wrongs. To the extent the Trustee claims that Club Holdings' ongoing use and continued solicitations of Ultimate Escapes' members are breaches of contract, the breaches are not continuing wrongs because each use or solicitation constitutes a separate breach. (*See* D.I. 1 at 20); *In re Casini*, 307 B.R. 800, 814 (Bankr. D.N.J. 2004) ("A continuous [wrong] argument is more appropriate for claims that are inherently and cumulatively wrongful, rather than discrete wrongful acts. As such, the continuing [wrong] doctrine is not typically applied in bankruptcy or contract actions.").

Count III, the Trustee's claim for misappropriation of trade secrets, does not allege a continuing wrong. A continuing misappropriation of trade secrets constitutes a single claim. Del. Code Ann. tit. 6, §2006; *see also* Colo. Rev. Stat. § 7-74-107; Fla. Stat. Ann. § 688.007.

Counts IV–VII, claims for avoidance and recovery of transfers in violation of the Bankruptcy Code and Uniform Fraudulent Transfer Act, do not allege continuing wrongs. In particular, the Trustee identifies (1) Ultimate Escapes' agreement with Club Holdings to transfer Ultimate Escapes' interests in its members and the related proprietary and confidential information and (2) Club Holdings' solicitation of Ultimate Escapes' members as unlawful transfers. (D.I. 1 at 30–33). To the extent the Trustee claims that the agreements themselves

14

were unlawful transfers, the transfers are not continuing wrongs because the parties entered the

agreements on discrete dates in 2010. (*Id.* at 8, 9, 12). To the extent the Trustee claims that

Club Holdings' continued solicitations of Ultimate Escapes' members and ongoing use of

Ultimate Escapes' proprietary and confidential information are unlawful transfers, the transfers

are not continuing wrongs because each use or solicitation constitutes a separate transfer. (*See*

D.I. 1 at 20); *see In re Casini*, 307 B.R. 800, 814 (Bankr. D.N.J. 2004).

The continuing wrong theory also does not apply to Counts VIII and IX, which allege

fraudulent and negligent misrepresentation, because the Trustee claims that Club Holdings

misrepresented that it only wanted to transfer thirty of Ultimate Escapes' members to Club

Holdings to induce Ultimate Escapes to enter the August 6 Agreement. (D.I. 1 at 33–34). The

Trustee's stated theory regarding Counts VIII and IX implies that the latest misrepresentation

occurred before August 6, 2010.

For the reasons above, the continuing wrong theory does not apply to the Trustee's

claims.

### D. Application of Statutes of Limitations

Count I alleges breach of contract. (D.I. 1 at 28). The statute of limitations for breach of

contract actions under Delaware law is three years. Del. Code. Ann. tit. 10, § 8106(a); *Fineberg*

*v. Credit Int'l Bancshares. Ltd.*, 857 F. Supp. 338, 350 (D. Del. 1994). The limitations period

begins to run at the time of the alleged breach. *Allstate Ins. Co. v. Spinelli*, 443 A.2d 1286, 1292

(Del. 1982). The alleged breaches of contract occurred on September 16, 2010 and September

22, 2010. (D.I. 1 at 16, 19, 28). The Trustee therefore brought Count I outside the applicable

statute of limitations.

15

Count II alleges unjust enrichment. (D.I. 1 at 29). The Delaware statute of limitations for unjust enrichment actions is three years. Del. Code. Ann. tit. 10, § 8106(a); *Medtronic Vascular, Inc. v. Advanced Cardiovascular Sys., Inc.*, 2005 WL 46553, at *4 (D. Del. Jan. 5, 2005), *aff'd*, 182 F. App'x 994 (2006). The limitations period begins to run at the time the alleged wrongful act occurs. *Vichi v. Koninklijke Philips Elecs. N.V.*, 2009 WL 4345724, at *15 (Del. Ch. Dec. 1, 2009); *Winner Acceptance Corp. v. Return on Capital Corp.*, 2008 WL 5352063, at *14 (Del. Ch. Dec. 23, 2008). Here, the alleged wrongs occurred on September 16, 2010 and September 22, 2010. (D.I. 1 at 16, 19, 29). The Trustee therefore brought Count II outside the applicable statute of limitations.

Count III alleges misappropriation of trade secrets. (D.I. 1 at 30). The Delaware statute of limitations for misappropriation of trade secret actions is three years. Del. Code. Ann. tit. 6, § 2006; *VLIW Tech., LLC v. Hewlett-Packard Co.*, 2005 WL 1089027, at *12 (Del. Ch. May 4, 2005). The limitations period begins to run at the time the alleged misappropriation is discovered or by the exercise of reasonable diligence should have been discovered. Del. Code Ann. tit. 6, § 2006; *see Medtronic Vascular*, 2005 WL 46553, at *4. The alleged misappropriations occurred on September 16, 2010 and September 22, 2010. (D.I. 1 at 16, 19, 30). It is clear that Ultimate Escapes knew of the alleged September 16th misappropriation that same day because it sent a cease and desist letter to Club Holdings. (D.I. 1 at 17). Ultimate Escapes knew of the alleged September 22nd misappropriation at least as early as September 28, 2010, when Ultimate Escapes filed an amended adversary complaint describing the September 22nd solicitation. (*See* D.I. 1-17 at 12, 18). The Trustee therefore brought Count III outside the applicable statute of limitations.

16

Count VI alleges fraudulent transfers recoverable under the Uniform Fraudulent Transfer Act. (D.I. 1 at 32). The statute of limitations under Delaware's fraudulent transfer statute is four years.[3] Del. Code Ann. tit. 6, § 1309. The alleged fraudulent transfers were made in connection with the August 6 Agreement, and thus occurred in August 2010. (*See* D.I. 1 at 32). The Trustee therefore brought Count VI outside the applicable statute of limitations.

Counts VIII and IX allege fraudulent misrepresentation and negligent misrepresentation. (D.I. 1 at 33–34). The Delaware statutes of limitations for fraudulent and negligent misrepresentation actions are three years. Del. Code Ann. tit. 10, § 8106(a); *Sunrise Ventures, LLC v. Rehoboth Canal Ventures, LLC*, 2010 WL 363845, at *6 (Del. Ch. Jan. 27, 2010), *aff'd*, 7 A.3d 485 (Del. 2010). The limitations periods for fraudulent and negligent misrepresentation begin to run at the time the alleged wrongful conduct occurred. *Lincoln Nat'l Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 563 (D. Del. 2010); *see also Smith v. Mattia*, 2010 WL 412030, at *3 (Del. Ch. Feb. 1, 2010); *Sunrise Ventures, LLC*, 2010 WL 363845, at *6. Counts VIII and IX assert claims based on misrepresentations that Club Holdings allegedly made in connection with the August 6 Agreement. (D.I. 1 at 33–34). The Trustee therefore brought Counts VIII and IX outside the applicable statutes of limitations.

As discussed above, the statute of limitations applicable to Counts V and VII states that claims must be brought within two years after the petition date or within one year after a trustee is appointed. 11 U.S.C. § 546(a)(1)(B). The statute of limitations applicable to Count IV states that claims must be brought within the earlier of "(1) two years after the date of the transfer

---

[3] A cause of action for transfers made with the intent to defraud is not extinguished even if it is not asserted within four years of the transfer, as long as it is asserted within one year after the transfer "was or could reasonably have been discovered by the claimant." Del. Code Ann. tit. 6, § 1309(a). Here, Ultimate Escapes knew of the allegedly fraudulent transfers at least as early as September 2010. (*See* D.I. 1-13 at 11–12).

sought to be avoided; or (2) the time the case is closed or dismissed." § 549(d). Here, the petition date was September 20, 2010 (D.I. 1 at 17), the Trustee was appointed December 8, 2011 (Bankr. Case No. 10-12915 D.I. 935 at 26; Bankr. Case No. 10-12915 D.I. 935-1 at 42), and the case was dismissed March 2, 2012 (D.I. 14 at 18). The Trustee thus brought Counts IV, V, and VII outside the applicable statutes of limitations.

The Trustee also asserts that "Club Holdings continues to this day to retain and use Ultimate Escapes' trade secret information to solicit members, with each use, solicitation, and retention of former Ultimate Escapes' members constituting a breach of the March 1, 2010, Mutual Confidentiality Agreement and giving rise to other causes of action." (D.I. 1 at 20). For the reasons discussed above, the Trustee's claims are time-barred to the extent they address conduct that occurred outside the applicable statutes of limitations. I cannot say that solicitations of Ultimate Escapes' members or uses of Ultimate Escapes' member information by Club Holdings that took place within the applicable statutes of limitations did not constitute independent breaches of contract (Count I), unjust enrichment (Count II), or fraudulent transfers (Count VI) that are not time barred. The single sentence in the Complaint regarding Club Holdings' continued solicitations, however, is insufficient to state a plausible entitlement to relief for those later occurring wrongs. (*See* D.I. 1 at 20); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). As such, the Trustee is granted leave to amend Counts I, II and VI of the Complaint to state facts sufficient to establish claims to the extent those claims are based solely on Club Holdings' solicitations of Ultimate Escapes' members or uses of Ultimate Escapes' member information that took place within the applicable statutes of limitations.

The Trustee requested leave to amend the Complaint in the event the Court concludes that the statutes of limitation have expired and were not equitably tolled. (D.I. 14 at 9 n.5). The

18

Trustee suggests that such an amendment could include, "for example, the Trustee's decision-making process in light of the bankruptcy court's contrary decisions." (*Id.*). The grant or denial of an opportunity to amend is within the discretion of the Court. *In re Burlington Coat Factory Secs. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). Federal Rule of Civil Procedure 15(a)(2) provides that "[t]he court should freely give leave [to amend] when justice so requires." Denial of leave to amend is appropriate if amendment would be futile. *See In re Burlington Coat Factory Secs. Litig.*, 114 F.3d at 1434. "'Futility' means that the complaint, as amended, would fail to state a claim upon which relief could be granted." *Id.* Leave to amend is generally "granted unless the amendment would not cure the deficiency." *Shane v. Fauver*, 213 F.3d 113, 115–16 (3d Cir. 2000). For the reasons discussed below, except with respect to the deficiencies noted in Counts I, II, and VI described above, the Trustee's request for leave to amend the Complaint would be futile.

The statutes of limitations for Trustee's claims have expired. Plaintiff has not alleged facts that, if true, would establish that the statutes of limitations were equitably tolled. Specifically, the Trustee has not alleged facts that, if true, would show: (1) that Ultimate Escapes pursued its rights against Club Holdings diligently; (2) that the circumstances that prevented timely filing were extraordinary; or (3) that the circumstances that prevented timely filing were beyond Ultimate Escapes' control. Further, there is no indication that the Trustee could allege such facts given an opportunity to amend. The Trustee's decision-making process in the face of the Bankruptcy Court's decisions, no matter how reasonable, cannot show that Ultimate Escapes diligently pursued its claims against Club Holdings because reasonableness in waiting to pursue a claim does not amount to diligence in pursuing a claim. *See Menominee Indian Tribe of Wis.*, 841 F. Supp. 2d at 107.

Additionally, the Trustee cannot allege facts that would demonstrate that the circumstances that prevented timely filing were beyond his control. The Trustee used "care, diligence, and skill in deciding which claims to prosecute, and how far" to decide to voluntarily dismiss the proceedings in Bankruptcy Court. (*See* D.I. 14 at 16 (quoting *In re Taxman Clothing Co.*, 49 F.3d 310, 315 (7th Cir. 1995) (internal quotation marks omitted))). That the Trustee determined, considering all relevant factors, that dismissal was the best response to the Bankruptcy Court's preliminary rulings regarding temporary injunctive relief does not change the fact that the Trustee could have continued to litigate the case.

The Trustee also has not suggested the existence of any facts that might amount to extraordinary circumstances. Instead, the Trustee contends that "in the face of such a 'slim' chance of success based on the bankruptcy court's unequivocal rulings in September 2010, the [Trustee's voluntary] dismissal was in line with the Trustee's fiduciary duties." (D.I. 14 at 16–17). However, as discussed above, the fact that a litigant faces significant costs, limited resources, and uncertain outcomes is not extraordinary. *See Menominee Indian Tribe of Wis.*, 136 S. Ct. at 757.

Except with respect to the noted deficiencies in Counts I, II, and VI, amending the Complaint would be futile.

## IV.    CONCLUSION

For the reasons stated above, Defendant's motion to dismiss is **GRANTED**. Plaintiff's request for leave to amend is **GRANTED** as to Counts I, II, and VI of the Complaint. A separate Order consistent with this Memorandum Opinion will be issued.

20